```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

**RANDOLPH MARTIN,**

                       **Plaintiff,**

            **v.**                      **CASE NO. 07-3021-SAC**

**KAREN ROHLING,**

                       **Defendants.**

<u>MEMORANDUM AND ORDER</u>

This action was submitted on forms for filing a civil rights complaint under 42 U.S.C. 1983, by an inmate currently confined at the Lansing Correctional Facility, Lansing, Kansas (LCF). Mr. Martin is serving a 23-month sentence entered in Saline County, Kansas, for making a false writing and fourth or subsequent conviction of driving under influence. The only named defendant is the Warden at the Larned Correctional Mental Health Facility, Larned, Kansas (LCMHF).

<u>**MOTION TO AMEND**</u>

Plaintiff has filed a "Motion to Amend" his complaint (Doc. 3). Since the defendant has not yet been served, plaintiff may amend his complaint without leave of court. However, plaintiff asks the court to amend his complaint to "include" the information in Document 3 rather than replace his original complaint with that information. The court thus construes plaintiff's Motion to Amend as a Motion to Supplement Complaint, and grants the motion (Doc. 3). Having considered the complaint as supplemented and the exhibits filed by plaintiff, the court finds as follows.

**FACTUAL BACKGROUND**

As the factual background for his complaint, Mr. Martin alleges he received a serious neck injury in May, 2006, prior to his commitment to the Kansas Department of Corrections (KDOC). He further alleges that upon his commitment to the KDOC, he informed medical staff of this injury. He was transferred to Osowatomi Correctional Facility (OCF), which had no medical facilities to provide treatment for his injury. He alleges he was "given a choice" to go to Lansing for medical treatment or stay in Osowatomi and "do the program" THERAPEUTIC COMMUNITY (T.C.). He further alleges "at the time he was unable to complete T.C. due to his injury." He states his Unit Team counselor, Ms. Baptiste, told him he could return to Lansing for medical treatment and "no punishment would arise due to the fact it was for medical reasons he couldn't complete the program as stated in IMPP-10 101 IV, D, Code 5." He further states no Class I Disciplinary Report was ever issued against him.

Plaintiff complains "the unit team" has taken all his good time credits (65 days) based upon his failure to complete the T.C. program[1] without giving him a "write-up or a hearing[2]." He alleges prison officials told him they were following IMPPs and state

---

[1] Plaintiff exhibits a KDOC Program Classification Review summary dated September 29, 2006, which indicates he entered the "Therapeutic Comm." program on June 13, 2006; and was terminated on July 18, 2006" for the reason: "Refused to participate." The "comments" section provides: "21 Days Good Time withheld for refusing TC."

[2] Plaintiff does not name the members of the "Unit Team" referred to here as defendants, or the "prison officials" referred to in the next sentence. He refers to titles only, and does not name the persons referred to as "named respondants (sic)." As discussed later herein, he must name as defendants those persons who actually participated in the alleged constitutional deprivations.

statutes, but claims they did not. He asserts his rights to due process under the Fourteenth Amendment have been violated by "above named respondants (sic)," the "Secretary of corrections designee, Warden, Unit team manager, and unit team" but again fails to name these individuals as defendants.

Plaintiff's exhibits shed additional light on his claims. They include a KDOC inmate grievance he submitted while at LCMHF on October 28, 2006, complaining that 21 days of his good time were "taken for un-just reasons."[3] The Unit Team at LCMHF responded:

> Mr. Martin signed a program refusal form and was discharged from the T.C. program. According to the discharge summary Mr. Martin was unwilling to complete the program due to his concerns with some of his medical issues.

Plaintiff appealed this decision to Warden Rohling at LCMHF. She responded on November 9, 2006:

> Per K.A.R. 44-6-115[4], if an inmate refuses to work constructively or participate in assigned programs, 100% of the good time credits for that period shall be withheld. Because you now do not have the time left on your sentence to complete the TC program, the remainder of the good time credits available will also be withheld."

Plaintiff also exhibits two "Good Time Award Record - Unit Team

---

[3] In this grievance, Mr. Martin asked that his 21 days good time credit be returned and no further sanctions or punishment be imposed "on this matter." He claimed he had no notice of the withholding until he was handed a Program Classification Review by "Unit Team R. Prez" on October 23, 2006, which he alleges was 4 months "after the fact." Another of plaintiff's exhibits, the KDOC "Program Classification Review" dated October 9, 2006, indicates that within the covered review period, May through September, 2006, he had "21 days good time withheld for refusing TC." It also indicates the Review was approved by a Classification Committee Member on October 9, 2006, signed by Unit Team member Perez on October 20, 2006, and signed by Martin on October 23, 2006. Plaintiff alleged he was terminated from the T.C. program because of medical issues "as stated in IMPP-10-101 IVD, Code 5 (NON VIOLATIONAL) and IMPP IVK Code II." The contents of these provisions are not provided.

[4] Kansas Statutes Annotated indicate K.A.R. 44-6-115 was revoked September 6, 2002.

3

Work Sheet" forms. One dated May 16, 2006, awarded Mr. Martin 32 out of 32 maximum available days of good time credits. The other dated September 16, 2006, provided that 0 days of 21 maximum possible days of good time credit be awarded for the reason: "refused T.C. at OCF."

**CLAIMS**

Plaintiff cites state statutes and regulations as legal support for his claims. He argues that under K.A.R. 44-6-124(b), "the inability to work or participate in programs due to legitimate health problems shall not be grounds for refusing good time credits." He also cites K.A.R. 44-6-124 (a)&(b)[5] as providing that an inmate with no class 1, 2, or 3 offenses shall receive at least 80 percent of his good time credits allocated for that review period;" and alleges he has received no disciplinary reports during his confinement. He contends the KDOC cannot take away good time credits, unless an inmate receives a Class 1 disciplinary report for failure to complete program.

Mr. Martin also argues he was entitled to due process he did not receive. He cites IMPP 11-106(3)(c)&(e) as providing an inmate has the right to be present at his 120-day review[6]. He

---

[5] Kansas Statutes Annotated indicate K.A.R. 44-6-124 was revoked on September 6, 2002.

[6] IMPP 11-106(II)(B)(1) (Mar. 21, 2005) provides that the first phase of "initial classification" of a KDOC inmate shall take place at the intake facility. The second phase will be conducted by the facility classification committee within 10 working days of an inmate's placement at an assigned facility. During the second phase, an inmate's initial good time award will be determined, which is defined as the first award of good time covering the period from the sentence begins date to the date of initial classification. Thereafter, the unit team is responsible for conducting "case reviews" in 120-day cycles established during initial classification. Inmates are to be present at the case reviews. Plaintiff does not allege any injury as arising from a delay in his initial classification. His

4

alleges he had no review until October 23, 2006; when he was handed the review showing credits were previously withheld without a hearing.  He cites <u>Wolf v. McDonnell</u> for the proposition that due process required he receive notice of the claimed violation and a written statement of reasons.  He additionally argues he never should have been placed in a program until his medical problems were resolved[7], and implies his program placement imposed an "atypical hardship" in violation of due process.  Plaintiff further argues the State may not subject him to a program dangerous to his life or health.

**RELIEF REQUESTED**

The only relief requested by plaintiff in his complaint is for the court to restore his days of good time and "put (him) back to" level 3.

**SCREENING**

Because Mr. Martin is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for the following reasons.

---

allegations and exhibits indicate he attended an intake interview, received all available credits for his "initial good time award," and a case review was conducted 120 days later.

[7] Plaintiff alleges his neck injury cannot be remedied until his release.

**PERSONS ALLEGED TO HAVE ACTED NOT NAMED AS DEFENDANTS**

The only defendant named by Mr. Martin in his complaint, even as supplemented, is Karen Rohling, Warden at LCMHF. As noted, plaintiff refers to "unit team," respondents, and other titles in his allegations. However, he does not designate any of these persons as defendants in the caption of his complaint. Rohling is not alleged to have participated in all the actions and inactions challenged. Plaintiff will be given time to name as defendants those persons he alleges actually participated in the challenged conduct. If he does not file an amended complaint properly naming and designating additional defendants, his civil rights claims can proceed only against defendant Rohling, and only upon those acts in which she is alleged to have personally participated.

With regard to habeas corpus claims, on the other hand, the only proper respondent is the petitioner's current custodian. Mr. Martin will be given time to name his current custodian as respondent if he can show exhaustion on his habeas corpus claims.

**FAILURE TO STATE A CLAIM UNDER 42 U.S.C. § 1983**

The threshold question presented by Mr. Martin's allegations is whether or not he has stated a claim cognizable under 42 U.S.C. 1983. He claims that prison officials who withheld his good time credits should have followed the procedures mandated for disciplinary actions and forfeiture of good time credits as a penalty. These particular claims might be cognizable under § 1983 as challenges to the procedures used or not used in withholding good time credits. However, the main thrust of Mr. Martin's complaint appears to be his challenge to the substantive decision

6

to withhold good time credits in his particular case, cognizable under the more specific habeas corpus statutes.

A single action may be brought as a hybrid seeking relief partly under habeas corpus and partly under § 1983. Richards v. Bellmon, 941 F.2d 1015, 1018 FN 3 (10th Cir. 1991) *citing* Wiggins v. New Mexico State Supreme Ct. Clerk, 664 F.2d 812, 816 (10th Cir. 1981), cert. denied, 459 U.S. 840 (1982); Parkhurst v. State of Wyo., 641 F.2d 775, 776 (10th Cir. 1981); see also Preiser v. Rodriguez, 411 U.S. 475, 499, FN 14 (1973)(habeas and § 1983 claims may be litigated simultaneously). However, to construe this complaint as arising under both § 1983 and § 2254 or either alone, "borders on advocacy and could interfere with a possible tactical choice by the plaintiff." Richards, 941 F.2d at 1019, FN3. Moreover, the court is not convinced that Mr. Martin seeks prospective equitable relief beyond the scope of habeas corpus[8], or that he is not simply attempting to avoid the exhaustion prerequisite by styling this action as a civil rights complaint.

---

[8] In Wolff v. McDonnell, the U.S. Supreme Court ruled that prisoners could not use § 1983 to obtain restoration of good time credits because Preiser had held that "an injunction restoring good time improperly taken is foreclosed." Wolff v. McDonnell, 418 U.S. 539, 555 (1974). However, the inmates could use § 1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid, and an injunction against the prospective enforcement of invalid prison regulations. Id. In neither case would success necessarily have meant immediate release or a shorter period of incarceration given that the prisoners attacked only the "wrong procedures, not . . . the wrong result" (i.e., the denial of good-time credits). Heck v. Humphrey, 512 U.S. 477, 483 (1994)(discussing Wolff). In Edwards v. Balisok, 520 U.S. 641, 643 (1997), Balisok sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." Id. at 643. Applying Heck, the Court found habeas corpus was the sole vehicle for the inmate's constitutional challenge even though the prisoner sought declaratory relief and money damages, because the "principal procedural defect complained of . . . would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." Edwards, 520 U.S. at 646.

**ABSTENTION**

Even if a portion of this action is cognizable under Section 1983, this court has reason to believe that plaintiff may already have an action pending in state court raising his claims[9]. If, in fact, plaintiff has filed such a state action, this court as a matter of comity must defer consideration of his claims, which might otherwise be cognizable under Section 1983. Huffman v. Pursue, Ltd., 420 U.S. 592, 603 (1975)(extending Younger abstention doctrine, Younger v. Harris, 401 U.S. 37 (1971), to civil proceedings); Parkhurst, 641 F.2d at777, *citing* Younger.

Plaintiff is required by this Order to inform the court whether or not he has filed an action in state court based upon the same facts as alleged herein. If plaintiff has such an action now pending in state court, this court will have to consider abstention.

**HABEAS CORPUS RELIEF REQUIRES EXHAUSTION OF STATE COURT REMEDIES**

If this court analyzed this action based solely upon the requested relief, as has often been the accepted practice, it would be construed as a habeas corpus petition attacking execution of Mr. Martin's state sentence under 28 U.S.C. 2241[10]. Plaintiff does not

---

[9] The form complaint filed herein by Mr. Martin required him to state if he had begun other lawsuits in state or federal court dealing with the same facts. He incorrectly answered "No." Plaintiff also averred that he has not filed any actions in any state court within the last five years. Contrary to his answers, plaintiff filed an action in this court on December 22, 2006, based upon the same facts, which he voluntarily dismissed so he "could file it in the state court under K.S.A. 60-1507." Martin v. Rohling, Case No. 06-3353-SAC (Jan. 24, 2007).

[10] Insofar as plaintiff seeks additional good time credits, his complaint "runs afoul" of the Supreme Court's holding in Preiser, 411 U.S. at 475. The Court in Preiser construed state prisoners' challenges to the disallowance of good time credits as a challenge to the duration of their

8

request money damages. He also does not request declaratory, injunctive, or any other kind of prospective relief in his complaint. Instead, he requests an order awarding him good time, which was allegedly improperly withheld. If the requested relief were granted, it would shorten the time Mr. Martin is to spend in prison[11].

"As a general rule, a challenge to the . . . duration of confinement, is cognizable only under the habeas statute with its requirement of exhaustion of state remedies." Richards, 941 F.2d at 1018, *citing* Preiser, 411 U.S. at 499-500; see also, Smith, 899 F.2d at 951 (the remedy for seeking restoration of good time credits is a writ of habeas corpus.). The United States Supreme Court initially addressed the relationship between § 1983 and the federal habeas statutes in Preiser v. Rodriguez. In Preiser, state prisoners brought civil rights actions attacking the constitutionality of prison disciplinary proceedings that had resulted in the deprivation of their good-time credits. Id. at 476. The Court conceded that the language of 42 U.S.C. § 1983 generally covered their claims. Id. at 489 (§ 1983 authorizes claims alleging the deprivation of constitutional rights by a "person" acting under color of state law). Nonetheless, the Court observed that the language of the federal habeas corpus statutes

---

imprisonment, and held that the writ of habeas corpus was the appropriate remedy for such claims. rather than a complaint under Section 1983. Id. at 487-90; see Smith v. Maschner, 899 F.2d 940, 951 (10th Cir. 1990).

[11]
    Even if the restoration of an inmate's good time credits would not result in his immediate release, but only in shortening the length of his confinement in prison, habeas corpus would be the appropriate remedy. Preiser, 411 U.S. at 487; Searcy v. Simmons, 299 F.3d 1220, (10th Cir. 2002).

applied as well.  See 28 U.S.C. § 2254(a)(authorizing claims by a person being held "in custody in violation of the Constitution"). The Court reasoned that the language of the habeas statute is more specific, and the writ's history made clear that it traditionally "has been accepted as the specific instrument to obtain release from [unlawful] confinement."  Preiser, 411 U.S. at 486.

The Court also found it "clear" that "the result must be the same in the case of a state prisoner's challenge to the fact or duration of his confinement, based . . . upon the alleged unconstitutionality of state administrative action."  Id. at 489. They reasoned that "such a challenge is as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement and seeks either immediate release from that confinement or the shortening of its duration."  Id.  The Court has since reiterated its holding that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement."  See e.g., Wolff, 418 U.S. at 554; Heck, 512 U.S. at 481; Balisok, 520 U.S. at 648.  Instead, he must seek federal habeas corpus relief or appropriate state habeas corpus relief if state court remedies are not exhausted.

Whatever the eventual disposition of plaintiff's civil rights claims, this court must treat the portion of plaintiff's action which seeks award of withheld good time credits as a habeas corpus action, subject to exhaustion requirements.  Plaintiff will be given time to show either that he has exhausted state court remedies on his claim of entitlement to withheld good time credits or that this claim should not be dismissed for failure to exhaust

10

state court remedies[12].

**FAILURE TO STATE A CLAIM OF CONSTITUTIONAL VIOLATION**

Even if plaintiff's challenges to state prison procedures were allowed to go forward under § 1983, the allegations of denial of procedural due process in the complaint fail to state a claim of constitutional violation. This court's "broad reading of [a pro se] plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Furthermore, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be [granted]." Id.

It is well-established that "an inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment'." Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991), *quoting* Ponte v. Real, 471 U.S. 491, 495 (1985). When a prison disciplinary proceeding has resulted in the loss of earned sentence credits, due process requires that the inmate receive (1) advance written notice of the disciplinary charges, (2) an opportunity to present witnesses and documentary evidence in his defense, and (3) a written statement of the reasons for the

---

[12] Mr. Martin was previously informed by this court in his prior habeas corpus action that he is required to exhaust state remedies on his claim of entitlement to the award of good time credits. See 28 U.S.C. 2254(b)(1)(A); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000); Herrera v. Harkins, 949 F.2d 1096, 1098 (10th Cir. 1991). He was further advised that if he had not exhausted state court remedies, he should immediately file his K.S.A. 60-1501 petition in the proper state district court. Plaintiff does not allege or show that he has exhausted his remedies in state court.

disciplinary action. <u>Wolff</u>, 418 U.S. at 563-67; <u>Superintendent, Mass.Corr.Inst., Walpole v. Hill</u>, 472 U.S. 445, 454 (1984). However, <u>Wolff</u> does not entitle plaintiff to relief in this case because he does not allege that good time credits he had already earned were forfeited as punishment during prison disciplinary proceedings. To the contrary, he alleges he has had no disciplinary reports filed against him.

Plaintiff's claim is that he has not been awarded all the good time credits available for him to earn. Kansas statutes and regulations govern the award and withholding of good time credits to Kansas inmates. K.S.A. 21-4722(a)(1) provides: "A system shall be developed whereby good behavior by inmates is the expected norm and negative behavior will be punished. . . ." K.S.A. 21-4722(c) provides:

> The secretary of corrections is hereby authorized to adopt rules and regulations to carry out the provisions of this act regarding good time calculations. Such rules and regulations shall provide circumstances upon which an inmate may earn good time credits and for the forfeiture of earned credits and such circumstances may include factors substantially related to program and work participation and conduct . . . .

<u>Id</u>. Kansas Administrative Regulations of the KDOC (K.A.R.) provide for good time credits and sentence computation in K.A.R. 44-6-115a, "Awarding and withholding good time credits for incarcerated offenders." Subsection (b)(1) provides:

> At the conclusion of the initial inmate classification, 100% of the good time credits available from the sentence begins date to the date of the initial good time award shall be awarded, unless there is written documentation of maladjustment before the date of the initial award.

K.A.R. 44-6-115a(b)(1). Plaintiff's exhibits show he was given the

full initial good time award.  K.A.R. 44-6-115a(c) provides:

> Following the initial award, good time credits may be awarded at each classification review from credits available since the previous classification review.

Id.  K.A.R. 44-6-115a(d)(1)-(6) provides:

> The following factors shall be considered in determining whether or not an inmate is awarded good time credits: (1) the inmates performance in a work assignment; (2) the inmate's performance in a program assignment; (3) the inmate's maintenance of an appropriate personal and group living environment; (4) the inmate's participation in release planning activities; (5) the inmate's disciplinary record; and (6) any other factors related to the inmate's general adjustment, performance, behavior, attitude, and overall demonstration of individual responsibility and accountability."

Id.  It is clear from the regulations that good time credits may properly be withheld based upon an inmate's refusal to participate in a work or program assignment.  K.A.R. 44-6-115a(e) provides:

> If an inmate refuses to work constructively or participate in assigned programs, 100% of the good time credits available for program classification review periods shall be withheld until the inmate participates in the assigned program at a time that permits the inmate to complete the program, unless the facility health authority determines that the inmate is physically or mentally incapable of working or participating in a particular program or detail.

Id.  Plaintiff acknowledges his available good time credits were not awarded based upon his refusal to participate in the assigned T.C. program.  Even though plaintiff asserts his belief that he was physically incapable of performing the work assignment, he does not allege or present any evidence that "the facility health authority" made a determination he was physically incapable of working or participating in the T.C. program as required in the foregoing

13

regulation.

The U.S. Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. Wolff, 418 U.S. at 557; Searcy v. Simmons, 299 F.3d at 1220. "[A]nd it is quite clear that Kansas does not make any promises regarding an inmate's ability to earn good time credits." Searcy, 299 F.3d at 1226, *citing* K.S.A. 21-4722 (granting the secretary of corrections discretion to develop a good-time credit award system); *and* Kansas v. Golston, 269 Kan. 345, 7 P.3d 1123, 1135 (2000)("The grant or denial of good time credits is totally within the discretion of penal authorities."), *citing* Frazee v. Maschner, 12 Kan.App.2d 525, 527, 750 P.2d 418, 421, *rev. denied* 243 Kan. 778 (1988)[citing prior K.A.R. 44-6-124(a) as providing only that an "inmate may earn good time credits which shall be subtracted from the minimum sentence"; and stating there is "no present liberty interest in the possibility of receiving" good time credits]. Thus, it is clear that in Kansas, the KDOC retains discretion in awarding good time credits. See K.S.A. 21-4722 ("an inmate may earn good time credits")(emphasis added); cf. Duncan v. Gunter, 15 F.3d 989, 992 (10th Cir. 1994)(relying on similar discretionary language in the Colorado good time credit statute). In Searcy, 299 F.3d at 1226, the Tenth Circuit Court of Appeals considered the withholding of credits from a Kansas prisoner who refused to participate in a treatment program. They held that foreclosing "the mere opportunity to earn good time credits is not a new penalty, but only the withholding of a benefit that the [KDOC] is under no obligation to give." They reasoned the inmate "was left with a

14

choice[13]: take advantage of a benefit that the [KDOC] provided or turn down that benefit in order to avoid what he feared . . . ." Id.

In the instant case, Mr. Martin was likewise faced with a choice between taking advantage of the opportunity to earn credits or declining that opportunity by refusing to participate in an assigned rehabilitative program.[14] The court presumes he made his choice due to legitimate medical concerns as he alleges. Cf. Wirsching v. Colorado, 360 F.3d 1191, 1203-04 (10th Cir. 2004). Nevertheless, the facts alleged by Mr. Martin taken as true, indicate he was at most denied the opportunity to earn good time credits: the withholding of a benefit, rather than the imposition of a penalty or the taking of earned credits. As the Tenth Circuit reasoned in an analogous situation, "the loss of the [o]pportunity to earn good time credit . . . because of reclassification does not deprive a prisoner of a constitutional right." See Twyman v. Crisp, 584 F.2d 352, 356 (10th Cir. 1978).

For the foregoing reasons plaintiff is required to show cause why this action should not be dismissed for failure to state a claim cognizable under 42 U.S.C. 1983; and, if construed as a habeas corpus petition, for failure to exhaust state court

---

[13] Such a choice was held not to constitute compulsion.

[14] K.A.R. 44-5-105(c)(1) pertinently provides:

> Any inmate may elect not to participate in a formal program plan. * * * The inmate shall not be penalized for refusal to participate in a formal program plan. The inmate shall nevertheless be subject to all the regulations of the secretary and the orders of the principal administrator, and shall be required to participate in any work assignments which are made by the unit team.

remedies.  If plaintiff fails to respond in the time provided, this action may be dismissed without further notice.

Plaintiff is advised that the filing fee for a federal habeas corpus petition is $5.00, while the filing fee for a civil rights complaint under 42 U.S.C. 1983 is $350.00.  If plaintiff persists in asserting his claims under § 1983, and his motion for leave to proceed in forma pauperis (Doc. 2) is granted, he will be allowed to proceed without prepayment of fees.  However, he shall also remain obligated to pay the full filing fee of $350.00 through payments collected from his institutional account, as his balance allows, pursuant to 28 U.S.C. 1915(b)(1).  On the other hand, if this action is construed as a habeas corpus petition only, Mr. Martin will be granted leave to proceed in forma pauperis, and will not remain obligated to pay the applicable fee of $5.00.

Plaintiff's motion for summary judgment (Doc. 4) has been considered.  It summarizes his allegations and arguments, but does not show he is entitled to judgment as a matter of law.  FRCP 56, 28 U.S.C.  Accordingly, this motion is denied.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Amend (Doc. 3) is treated as a Motion to Supplement Complaint (Doc. 3) and granted.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Summary Judgment (Doc. 4) is denied.

**IT IS FURTHER ORDERED** that plaintiff is given thirty (30) days to show cause why his claims asserted under 42 U.S.C. 1983 should not be dismissed for failure to state a claim cognizable under 42 U.S.C. 1983, and why his habeas corpus claims should not

16

be dismissed, without prejudice, for failure to exhaust state court remedies; and to inform the court whether or not he has filed an action in state court based upon the claims raised herein.

**IT IS SO ORDERED.**

Dated this 29th day of March, 2007, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge